In the Matter of CARL GLISSON, Appellant, v NORMAN STEISEL, as Commissioner of the Department of Sanitation of the City of New York, Respondent.

First Department, November 3, 1983

### APPEARANCES OF COUNSEL

*Barbara A. Cass* of counsel (*Ronald E. Sternberg* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondent.

*Morris Weissberg* for appellant.

### OPINION OF THE COURT

SILVERMAN, J.

This is an appeal by petitioner from a judgment of the Supreme Court, New York County, Special Term, dismissing petitioner's CPLR article 78 proceeding which sought petitioner's reinstatement as a sanitationman in the New York City Department of Sanitation, and annulment of the action of the commissioner of that department in terminating petitioner's employment without a hearing.

Petitioner was appointed as a sanitationman in the Department of Sanitation of the City of New York on July 14, 1980. Rule 5.2.1. (a) of the Rules and Regulations of the City Personnel Director provides for a one-year probationary period. Rule 5.2.8. provides for extensions of the proba-

tionary period with the written consent of the probationer for additional periods not exceeding in the aggregate six months. Petitioner's original probationary period would have expired on July 13, 1981. There were two three-month extensions of the probationary period with petitioner's consent, first to October 13, 1981 and then to January 13, 1982. Petitioner was discharged without a hearing as a probationer, effective July 16, 1982.

On April 8, 1981, during his original probationary period, while on duty driving a sanitation vehicle, petitioner was involved in a vehicular accident which the department concluded was the result of petitioner's driving. Accordingly, the department "grounded" petitioner thereby prohibiting him from performing tasks requiring him to operate all types of motorized equipment. Petitioner remained "grounded" throughout his entire employment. On January 28, 1982 petitioner, despite his grounding, drove a Department of Sanitation vehicle and became involved in another accident. It is the contention of respondent commissioner that petitioner's probationary period was automatically extended by virtue of Personnel Policy and Procedure (PPP) No. 615-77 (a), which provides for the extension of the probationary period for the number of days when probationer was not performing the duties of the position, including limited duty status and sick leave. The number of days petitioner was away from work because of claimed sickness are clearly not enough to extend the probationary period for six months. However, if his grounding constituted limited duty and if the probationary period was extended by the period of grounding then the probationary period would have been extended for nine months as of the expiration of the last agreed extension — January 13, 1982 — and indeed 14 or 15 months as of the time of his dismissal.

Petitioner disputes the validity of PPP No. 615-77 (a) because the procedure followed in the adoption of PPP No. 615-77 (a) did not comply with subdivisions f and c of section 1105 of the New York City Charter (it was not filed with the city clerk, published in the *City Record,* etc.). Respondent takes the position that if PPP No. 615-77 (a) is a "rule", its adoption is governed not by the City Charter

but by section 20 of the Civil Service Law. We need not concern ourselves with the question whether the applicable procedure for adoption of such a "rule" is the City Charter provision or the Civil Service Law provision; concededly, neither was complied with. However, respondent says that it was unnecessary to comply with these statutes because PPP No. 615-77 (a) is not a "rule" but is in the nature of an "interpretative rule" or an "interpretative statement," which merely attempts to clarify or define what is meant by the term "a probationary period of one year" (or presumably one year and six months as the case may be).

We cannot accept respondent's contention for these reasons:

(a) In form, at least, PPP No. 615-77 (a) does not purport to be an interpretation but an extension of the probationary period. It does not say, e.g., "in calculating the probationary period there shall be excluded, etc."; instead it says "the probationary period is extended by the number of days."

(b) If it is deemed an interpretation, it is an irrational and invalid interpretation in violation of Personnel Department Rule 5.2.2. (b), which provides: "the computation of the probationary period shall be based on the time during which the employee is on the job on a pay status."

(c) As respondent concedes, the validity of an interpretation by an administrative agency depends in part on its reasonableness. As applied to the facts of this case, the interpretation is unreasonable. Respondent commissioner unilaterally — though doubtless for good cause — grounded petitioner and kept him grounded continuously until the end of his employment, over 14 months. To call this unilaterally imposed status "limited duty", which automatically extends the probationary period, enables the commissioner by his own unilateral act to extend the probationary period indefinitely. Public employees are entitled to know definitely when their probationary period ends. And the public is entitled to have the heads of administrative agencies make a decision at a definite date as to whether a probationary employee shall become a

permanent employee, rather than being able to extend the probationary period indefinitely.

(d) Respondent's interpretation is inconsistent with his own actions in extending the probationary period by agreement to specific dates. Thus by express agreement on June 16, 1981 petitioner's probationary period was extended "to October 13, 1981"; by express agreement in October, 1981 petitioner's probationary period was extended for "an additional three (3) months to Jan. 13, 1982." At the time of each of these extensions, petitioner had already been grounded for periods longer than the period of extension (over three months from April 9 to July 13, 1981, and over six months from April 9 to October 13, 1981). If his probationary period had already been automatically extended by the period of grounding, what was the need of an agreed explicit extension, and why make these extensions "to October 13, 1981" and "to Jan. 13, 1982", both dates occurring before the automatic extensions, if any, would have expired? These agreed extensions to specific dates only make sense as recognitions that the probationary period had not been automatically extended by the period of grounding.

(e) Finally, we note that while the probation reports with respect to petitioner in June, 1981 and in September, 1981 each recommend a three-month extension, the probation report in December, 1981, although stating that petitioner was unratable as to certain tasks because he was grounded, contains no recommendation for an extension.

Judgment, Supreme Court, New York County (A. E. BLYN, J.), entered January 21, 1983 dismissing article 78 petition seeking annulment of respondent's action terminating petitioner's employment as a sanitationman, is unanimously reversed, on the law, without costs, and petition is granted, and petitioner is reinstated effective July 16, 1982, without prejudice to appropriate proceedings by respondent for petitioner's discharge in accordance with procedures applicable to a permanent employee.

SULLIVAN, J. P., ROSS, CARRO and LYNCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on January 21, 1983, unanimously reversed, on the law, without costs and without disbursements, and the petition

is granted, and petitioner is reinstated effective July 16, 1982, without prejudice to appropriate proceedings by respondent for petitioner's discharge in accordance with procedures applicable to a permanent employee.