[649 NYS2d 703]

In the Matter of KAREN E. GARCIA, Respondent, v WILLIAM J. BRATTON, as Police Commissioner of the City of New York, et al., Appellants.

First Department, November 21, 1996

APPEARANCES OF COUNSEL

*Fay Ng* and *Pamela Seider Dolgow* of counsel, New York City *(Kristin Helmers* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for appellants.

*Andrea E. Levine* of counsel, Kew Gardens *(Joseph O. Giaimo* on the brief; *Giaimo & Vreeburg, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

On April 25, 1990, petitioner was appointed, subject to a two-year term of probation, to the New York City Police Department. On October 14, 1992, prior to the expiration of her probation, petitioner was placed on modified duty and assigned to the Motor Transport Division pending an investigation into allegations that she failed to take proper police action at the scene of a shooting that resulted in a double homicide, which occurred on July 18, 1992, at approximately 3:30 A.M., at Bell Boulevard and 39th Avenue, Queens, New York. The shootings took place on the sidewalk across the street and approximately 300 feet from the Palm Club, where petitioner and two other probationary officers, off duty at the time, were patrons. Patrick Bannon, a bouncer at the club, was ultimately arrested and convicted of the homicides, in one of which the victim was an off-duty Housing Authority police officer.

Petitioner, who was aware of the disturbance and observed police vehicles at the crime scene, left without identifying herself to the responding officers although, as it later developed, she had heard six to eight gunshots and, at about 3:15 A.M., had seen the bouncers, including Bannon, leave the Palm Club and run across Bell Boulevard, where she observed a fight involving one of the club owners. Shortly thereafter, when the bouncers returned, she observed blood on an agitated Bannon, who, with the other bouncers, went to the back of the bar and then left the club again. She then saw Bannon and another bouncer enter a car outside the club and travel to 40th Avenue; five minutes later, she heard gunshots. She observed people scattering and cars speeding past the club and "all over" Bell Boulevard between 39th and 40th Avenues. One of the cars looked like the car Bannon had entered.

The next morning, when asked by a fellow officer at the 47th Precinct, petitioner denied that she was on Bell Boulevard the night before and that she knew any of the bouncers. After be-

ing interviewed two days later by members of the 111th Precinct Detective Squad, petitioner was found to be "not forthcoming". On December 29 and 30, 1993, 14 months after petitioner had been placed on modified duty and assigned to the Motor Transport Division pending an investigation into allegations that she failed to take proper police action at the· scene of a homicide and to cooperate in the ensuing criminal investigation, the Police Department preferred charges and specifications against her, including failure to take proper police action while at the scene of a police-related incident, failure to make proper notification to the Police Department, failure to identify herself to on-duty officers and falsely reporting that she was not present on Bell Boulevard on July 18, 1992 or that she knew the alleged perpetrator, Patrick Bannon. After the completion of its investigation, the Commanding Officer of the Internal Affairs Bureau recommended that petitioner and the two other probationary police officers be terminated from service. On January 10, 1994, petitioner's employment as a probationary police officer was terminated.

Petitioner commenced this CPLR article 78 proceeding challenging her termination without a hearing. Although initially dismissing the petition, the IAS Court, upon reargument, granted the petition and directed petitioner's reinstatement, holding that Rules of the Department of Personnel (59 RCNY Appendix A) rule 5.2.8 (b), upon which the Police Department relied in determining that petitioner was still a probationary employee at the time of her termination, did not extend the probationary period by the number of days she was on modified assignment. Thus, the IAS Court held, petitioner's employment could not be terminated without a hearing. We reverse.

Insofar as is relevant, rule 5.2.8 (b) provides that "the probationary term is extended by the number of days when the probationer does not perform the duties of the position, for example: limited duty status, annual leave, sick leave, leave without pay, or use of compensatory time earned in a different job title; provided, however, that the agency head may terminate the employment of the probationer at any time during any such additional period."

As noted, on October 14, 1992, petitioner was placed on modified duty with the Motor Transport Division, pending the outcome of the Department's investigation into her failure to cooperate in the investigation of a double homicide, and remained on modified duty until the termination of her service on January 10, 1994. Pursuant to rule 5.2.8 (b), petitioner's

probationary period was extended by the period of time she was on modified duty since, during that period, she did "not perform the duties of the position." The purpose of modified duty, according to New York City Police Patrol Guide § 118-121, is "[t]o assign a uniformed member of the service to non-enforcement duties pending determination of fitness to perform police duties." Thus, when a member of the Police Department is placed on modified duty, his firearm, shield and identification card are taken from him and he is directed to report for work the next business day in civilian clothing. (*Ibid.*) Although an officer on modified duty continues to receive pay and accrue vacation time, he is "not perform[ing] the duties of the position", namely, "police duties", during that period.

While there is no specific reference to "modified duty" status in rule 5.2.8 (b), which, as noted, provides that the probationary period is extended by the "number of days when the probationer does not perform the duties of the position, for example: limited duty status, annual leave, sick leave", the examples given are only illustrative and not intended to be inclusive of all the instances in which the probationary term would be extended. By the clear terms of rule 5.2.8 (b), petitioner's probationary term was extended when she was placed on modified duty because she was not performing "police duties".

Such an interpretation of rule 5.2.8 (b) is consistent with the function of probation, which is to permit the appointing officer the opportunity to evaluate the officer's merit and fitness to perform the duties of police work. (*Tomlinson v Ward*, 110 AD2d 537, 538, *affd* 66 NY2d 771.) While petitioner was on modified duty with the Motor Transport Division she was not performing the duties of a police officer since her weapon and shield had been removed and her merit and fitness as a police officer could not be evaluated. As this Court noted in *Tomlinson v Ward (supra*, at 538), "The purpose of excluding from the probationary term periods during which a probationer is not at work performing his or her duties is not punitive, but rather is the same as that underlying a probationary term in the first instance. It is designed to enable the appointing officer to ascertain the fitness of the probationer and to give the probationer a reasonable opportunity to demonstrate the ability to perform the duties of the office [citations omitted]. The period should be measured by the number of days a probationer is actually working at the job."

Significantly, petitioner was on probation at the time she was placed on modified duty and could have, at that time, been

terminated without a hearing and without a stated reason. (*Matter of Johnson v Katz*, 68 NY2d 649.) It would be incongruous in the extreme to require the Police Department to afford petitioner a hearing now because it chose, instead, to proceed cautiously and to complete its investigation before taking action. As a matter of public policy, the Police Department's interpretation of rule 5.2.8 (b) is eminently sensible. The Department should be encouraged, without having to relinquish the right to treat an officer as a probationer, to conduct a complete and thorough investigation before taking action against him or her; it is able to accomplish this through the modified duty mechanism.

*Matter of Glisson v Steisel* (96 AD2d 83), relied upon by the dissent, is distinguishable from the instant matter. There, a Department of Sanitation worker, who had been "grounded" after his involvement in a vehicular accident, agreed to two extensions of his probation. This Court, applying Department of Personnel former rule 5.2.2 (b), which provided that "the computation of the probationary period shall be based on the time during which the employee is on the job on a pay status", held that the grounding of the sanitation worker did not extend the probationary period since the employee and the Department had entered into agreements to extend probation to a date certain.

While this Court was concerned in *Glisson* with the potential for abuse of the probationary system by the unilateral placement of an employee on limited duty status, the current Department of Personnel rule 5.2.8 (b), which is at the crux of the matter here and which, as noted, extends the probationary term "by the number of days when the probationer does not perform the duties of the position", was not at issue there. At the time *Glisson* was decided, rule 5.2.8 (b) was merely a Personnel Policy and Procedure and not, as now, a rule. Thus, the issue in *Glisson* was whether the Department of Personnel's policy, as now embodied in rule 5.2.8 (b), to extend probation by the number of days the employee was on limited duty status was a reasonable interpretation of former rule 5.2.2 (b), which provided that the computation of the probationary period "shall be based on the time during which the employee is on the job on a pay status". Rule 5.2.8 (b), extending the probationary period by "the number of days when the probationer does not perform the duties of the position", was promulgated subsequent to the decision in *Glisson* and has been sustained by this Court as a proper exercise of regulatory

power. (*See, e.g., Matter of Thomas v Abate*, 213 AD2d 251; *Matter of Skidmore v Abate*, 213 AD2d 259; *see also, Matter of Golden v Abate*, 201 AD2d 256, *lv denied* 83 NY2d 757.)

Nor is the concern expressed by this Court in *Glisson* about the potential for abuse of the probationary system at issue here. Unlike *Glisson*, petitioner's placement on modified duty was not indefinite; she was placed on modified duty pending the completion of an investigation into her alleged failure to cooperate with a criminal investigation. That investigation was for her benefit, since her services could have been terminated forthwith, and was, judging by its 14-month duration, apparently a thorough one. Petitioner should not be doubly benefitted by being accorded credit for performing police duties during a period of modified duty when she was not performing the duties of a police officer.

Since petitioner has failed to demonstrate that she was discharged in bad faith, it being undisputed that her services were terminated because of the findings of the Internal Affairs Bureau, she was not entitled, as a probationary officer, to a hearing. (*Matter of Beacham v Brown*, 215 AD2d 334, *lv denied* 87 NY2d 801.)

Accordingly, the order of the Supreme Court, New York County (Fern Fisher-Brandveen, J.), entered October 12, 1995, which granted petitioner's motion for reargument and, upon reargument, granted the article 78 petition and directed petitioner's reinstatement as a New York City police officer, should be reversed, on the law, without costs or disbursements, the petition denied and dismissed and the determination of termination confirmed.

MURPHY, P. J. (dissenting). I respectfully dissent.

Petitioner was appointed to the New York City Police Department in April 1990, subject to a two-year probationary period. Pursuant to the Rules of the City Personnel Director, that probation period was subsequently extended until October 26, 1992. During the course of that extended probationary period, petitioner's off-duty conduct in the vicinity of a double homicide on the evening of July 18, 1992 became the subject of an Internal Affairs investigation. In consequence of this investigation, and prior to the expiration of the extended probationary period, the Department placed petitioner on "modified duty", during which she was reassigned to the Department's Motor Transport Division. The Department did not inform petitioner that this reassignment constituted an ad-

ditional extension of her probationary period. Fourteen months later, on December 29 and 30, 1993, the Department filed charges and specifications against petitioner for her actions relating to the July 18, 1992 incident. The Department terminated petitioner's employment, without a hearing, on January 10, 1994.

I have no doubt that the Department might reasonably determine, as a policy matter, that modified assignment status is analogous to limited duty status for purposes of extending the probationary period in some or all cases. Yet our deference to the Department's interpretation of its regulations, as a matter of administrative law, cannot absolve the Department from its obligation, as a matter of due process, to inform its employee of that interpretation at the time the officer is placed on modified assignment status. "Public employees are entitled to know definitely when their probationary period ends" (*Matter of Glisson v Steisel*, 96 AD2d 83, 85). An employee should not be left to guess whether duties performed during the period of modified assignment are "not * * * duties of the position" of police officer pursuant to Rules of the Department of Personnel (59 RCNY Appendix A) rule 5.2.8 (b), thereby continuing the probation period. While the majority makes much of the petitioner's assignment to modified duty, it is a known fact that many members of the Police Department are assigned to duty in positions that can be filled by civilians. The media regularly reports on the efforts of the Commissioner to fill these positions with civilians so that the officers can be returned to street duties. Since it is undisputed that neither the language of rule 5.2.8 (b) nor the Department apprised petitioner that her probationary period was extended, the dismissal of petitioner without a hearing was error.

Rosenberger and Nardelli, JJ., concur with Sullivan, J.; Murphy, P. J., and Rubin, J., dissent in a separate opinion by Murphy, P. J.

Order, Supreme Court, New York County, entered October 12, 1995, reversed, on the law, without costs or disbursements, the petition denied and dismissed and the determination of termination confirmed.