Ciparick, J.
(dissenting). The majority holds that petitioner’s modified duty served to extend her probationary status, by operation of law through an expansive interpretation of rule 5.2.8 (b) of the Rules and Regulations of the City Personnel Director, now the Department of Citywide Administrative Services (55 RCNY 5.2.8 [b]j. The legal effect of such interpretation permits the employer to terminate petitioner without a hearing 3s ¡4 years after her employment began. Because we conclude that petitioner is entitled to actual or reasonably discernible notice that her modified duty status extends her probationary period, and because she did not receive any notice in the instant case, we respectfully dissent.
Petitioner was appointed to the New York City Police Department on April 25, 1990. Like all other police officers joining the Department at that time, petitioner’s employment was conditioned on a two-year probationary period, ending April 24, 1992, during which time she was subject to termination without cause and without a hearing. Pursuant to rule 5.2.8 (a) and (b), petitioner’s probationary period was extended for a period "not exceeding in the aggregate six months”, for days when petitioner was out sick, on vacation, or on limited capacity status. On October 14, 1992, before the end of the extended probationary period, petitioner was placed on "modified duty” status and reassigned to the Police Department’s Motor Transport Division, pending an internal investigation of *995 petitioner’s alleged misconduct on the night of July 18-19, 1992.
Petitioner remained on "modified duty” for the next year, and on December 29, 1993, while still on "modified duty” status, the Department preferred charges and specifications against her pertaining to the July 1992 incident, and subsequently terminated petitioner, without a hearing, on January 10, 1994. Since petitioner ordinarily would have earned tenure and become a permanent employee in October 1992, petitioner could only have been discharged without a hearing if the "modified duty” status served to automatically and continually extend her probation.
Rule 5.2.8 (b) was promulgated under the authority of section 75 of the Civil Service Law, section 891 of McKinney’s Unconsolidated Laws of NY (L 1940, ch 834) and the New York City Charter § 810 et seq. It is evident from the language of section 75 that the Legislature, in enacting the statute, contemplated a system of some reasonable notice and procedural due process for civil servants subject to disciplinary actions and proceedings (see, e.g., Civil Service Law § 75 [2] [entitled "Procedure,” and providing that civil servants who are potential subjects of disciplinary action shall be "notified in advance” of questioning of their right to counsel; also providing that "(a) person against whom removal or other disciplinary action is proposed shall have written notice thereof and of the reasons therefor”]). In general, 55 RCNY 5.2.8 (a) and (b), and 38 RCNY chapter 15, as it relates to Police Department adjudications, adhere to the system of notice and procedural safeguards set forth in section 75.
Rule 5.2.8 (a) provides that the agency may extend an employee’s probationary period, not exceeding six months, only upon written request and with the written consent of the probationer. By providing for the automatic extension of probationary periods "by the number of days when the probationer does not perform the duties of the position,” rule 5.2.8 (b) allows for the automatic extension of probation, without the written consent of the probationer in certain situations effected by the employee, such as absence due to illness, disability, and jury service (see, Matter of Tomlinson v Ward, 110 AD2d 537, affd for reasons stated below, 66 NY2d 771). Thus the employer / agency is not deprived of the opportunity of evaluating its employee during periods of absence, avoiding the absurd situation wherein a probationary period could lapse while an employee is absent from his or her employment and *996 not subject to evaluation. We agree with the majority that this rule protects the public interest by allowing the City a full two-year opportunity "to assess the merit and fitness of such employees”. (Majority mem, at 994.)
The respondent maintains and the majority agrees that while petitioner was on modified duty, the Department was unable to ascertain the fitness of the probationer because she was performing nonenforcement duties. The majority, however, notes that the stated purpose of modified duty within the Police Department is to determine the officer’s fitness to perform police duties quoting from the New York City Police Department Patrol Guide § 118-12. In fact, petitioner was given a satisfactory annúal evaluation by her supervising officer three months after she was placed on modified duty, without making any distinction as to enforcement versus nonenforcement duties.
The Department concedes that the very purpose of modified duty is to enable it to evaluate police officers’ fitness for enforcement duties while on modified duty. It appears then that no policy of enhancing administrative efficiency should be furthered by deeming "modified duty” as within the scope of rule 5.2.8 (b), especially since such a construction simultaneously results in a serious procedural deprivation and prejudice to the employee.
Indeed, the Police Department, here, by its interpretation of rule 5.2.8 (b) allowing for the unilateral automatic extension of a probationary period during a "modified duty” assignment, has frustrated the reasonable expectation of a probationary employee to notice as to when a probationary period ends (see, Matter of Glisson v Steisel, 96 AD2d 83).
The Appellate Division and the majority here have given deference to an agency interpretation of the rule which according to the agency would provide adequate notice. Such interpretation has defined "limited duty status” as used in rule 5.2.8 (b) as including "modified duty,” as described in the Department’s Patrol Guide, and according to the agency provides an employee with sufficient notice of the extension of probation upon being placed on such "modified duty.”
This is clearly contrary to the notice provisions envisioned by the statutes, the Charter and the rules. Rule 5.2.1 (b) as it relates to probationary terms states "Appointees shall be informed of the applicable probationary period. However, such probationary period may be terminated by the city personnel director or by the agency head before the end of the probationary period” (emphasis supplied).
*997 Rule 5.2.2 (b) states "the computation of the probationary period shall be based on the time during which the employee is on the job in a pay status” (emphasis supplied).
Rule 5.2.7 (a) as it relates to termination further states, "At the end of the probationary term, the agency head may terminate the employment of any unsatisfactory probationer by notice to said probationer” (emphasis supplied), and at rule 5.2.7 (c) "the agency head may terminate the employment of any probationer whose conduct and performance is not satisfactory * * * before the completion of the maximum period of probationary service by notice to the said probationer” (emphasis supplied).
Clearly, here, the probationer had no actual notice of when her probationary term would end, nor does the rule provide adequate constructive notice. She could reasonably assume that her probationary term had expired. She was continuously "on the job in a pay status” well after her expected termination date and was never notified otherwise.
Petitioner was given the final medical examination which ordinarily marks the end of the probationary period, and understandably believed her probationary period to be over. There is evidence in the record that, as late as January 15, 1993, well after petitioner was placed on modified duty, the Department itself considered petitioner’s probationary period to be over (see, Annual Performance Evaluation, dated Jan. 15, 1993, identifying petitioner as "PO” [police officer], in lieu of "PPO” [probationary police officer]). It was 11 months later that she was served with charges and specifications — another indicia of permanent employment status — and then ultimately terminated without a hearing.
It would be exceedingly unfair to permit the Police Department to lead the noticeless petitioner to believe that she had gained tenure, and yet in fact keep petitioner on probation indefinitely, as it suited the Department’s purposes, without some reasonable knowledge of its termination date, envisioned and granted by the enabling statutes and the rules.
Accordingly, we respectfully dissent and would reinstate petitioner without prejudice to respondent prosecuting its disciplinary proceeding against her in accordance with appropriate procedures applicable to permanent employees of the New York City Police Department.
Chief Judge Kaye and Judges Titone, Levine and Wesley concur; Judge Ciparick dissents and votes to reverse in an opinion in which Judges Bellacosa and Smith concur.
*998 Order affirmed, with costs, in a memorandum.